LABOR & FARM PARTY, a political party recognized by the State of Wisconsin; William Osborne Hart, Michael Sack and James Henkel, Petitioners,

v.

ELECTIONS BOARD, State of Wisconsin, 1984 Presidential Preference Selection Committee, State of Wisconsin; Larry Smiley, Gayle Stangle, Fred A. Risser, Thomas Westgaard, Nathan S. Heffernan, Ody J. Fish, Rebecca Bancroft, Don Taylor, Gary J.N. Aamodt, and Matthew J. Flynn, in their official capacity as members of the 1984 Presidential Preference Selection Committee, Respondents.

Supreme Court

No. 84-299-OA. Argued February 24, 1984.—
Decided February 28, 1984.
(Also reported in 344 N.W.2d 177.)

For the petitioners there was oral argument by *Cheryl Rosen Weston,* Madison.

For the respondents there was oral argument by *Alan M. Lee,* assistant attorney general.

## PER CURIAM.

On February 13, 1984, the petitioners filed a petition asking this court to exercise its original jurisdiction and, among other things, issue a writ of *mandamus* requiring the respondents to place the name of William Osborne Hart on the ballot as the Labor and Farm Party's candidate for the office of president of the United States in the presidential preference election to be held April 3, 1984.

Because we conclude that this matter is *publici juris,* it is therefore appropriate for us to exercise our original jurisdiction.[1] Furthermore, the statute applied by the respondents to keep Hart's name off the ballot is ambiguous and accordingly, subject to judicial construction. We conclude that the national news media recognition test of sec. 8.12(1)(a), Stats., does not apply to the candidacy of William Osborne Hart who is the sole presidential candidate of the Labor and Farm Party. We direct that the name of William Osborne Hart be placed on the presidential preference ballot as the Labor and Farm Party's candidate for president of the United States.

---

[1] We deem the allegations contained in the petition and the denials contained in the response are sufficient to stand as the complaint and answer in this original action. *See, Petition of Heil,* 230 Wis. 428, 284 N.W. 42 (1934) and *In re Exercise of Original Jurisdiction,* 201 Wis. 123, 229 N.W. 643 (1930).

The relevant facts in this case are undisputed: The 1984 presidential preference selection committee organized pursuant to sec. 8.12(1)(a), Stats., met on January 31, 1984, for the purpose of determining the names of the presidential candidates of the political parties which have achieved ballot status under sec. 5.62. Hart's name was proposed by the Labor and Farm Party as its only presidential candidate. The committee, applying the so-called national news media recognition test set forth in sec. 8.12(1)(a),[2] voted to keep Hart's name off the ballot as a candidate of the Labor and Farm Party even though that party itself has a place on the presidential preference ballot.[3] On February 2, 1984, the chairman of the selection committee certified to the Elections Board the names of the various candidates of the several political parties with ballot status. Hart's name was not among those certified. As a result, the presidential preference ballot for the Labor and Farm Party will contain no candidate's name, but instead, pursuant to sec. 5.60(8)(a)3, will state that no candidates of the Labor

---

[2] Section 8.12(1)(a) after prescribing the membership of the presidential preference selection committee describes the committee's duties as follows:

"8.12(1) . . . .

"(a) . . . . This committee shall organize by selecting an additional member who shall be chairman and determine, and certify to the [Elections Board] . . . . the names of all candidates of the political parties recognized under sec. 5.62 for the office of president of the United States. The committee shall have sole discretion to determine that such candidates candidacy is generally advocated or recognized in the national news media throughout the United States."

[3] We take judicial notice of the 1983–1984 *Wisconsin Blue Book*, p. 903, which reveals that William Osborne Hart as a candidate for the United States Senate received 21,807 votes in the November 2, 1982, general election. Because this represented 1.4 percent of the total statewide vote for that office, Hart's party is entitled to ballot status pursuant to sec. 5.62 (1)(b), Stats.

and Farm Party have, ". . . qualified to have their names appear on the printed ballot."[4]

Although this court's jurisdiction is not exclusive inasmuch as the action could have been brought in circuit court, under the particular circumstances of this case, including the shortness of time available before the ballots are to be printed, the dispatch within which the petitioners filed their petition in this court, and the statewide importance of the issues raised, we conclude that we should exercise our original jurisdiction and resolve the issues presented. *See, Petition of Heil, supra. See also, State ex rel. Rinder v. Goff,* 129 Wis. 668, 677, 109 N.W. 628 (1906). Accordingly, we turn to the merits.

The primary relief sought by the petitioners is an order from this court directing the Elections Board to place Hart's name on the presidential preference ballot. The petitioners do not claim that Hart's candidacy satisfies the national media recognition test of sec. 8.12(1) (a), Stats., or that sufficient evidence of his national prominence was presented to the committee for its favorable action. Instead, the petitioners raise a constitutional challenge contending that the statute as applied deprives them in their respective capacities of not only substantive and procedural due process rights, and equal protection, but also of First Amendment associational freedoms. We need not reach these various constitutional issues because we conclude the case can be resolved on statutory construction grounds alone. This court does not normally decide constitutional questions if the case can be resolved on other grounds. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981).

---

[4] This court has had to act quickly in this matter because, as both sides acknowledge, the ballots will be sent to the printer on March 1, 1984, and thereafter distributed throughout the state in time for the April 3rd presidential preference election.

Section 8.12(1)(a), Stats., is ambiguous. The statute directs the presidential preference selection committee to certify the names of all the presidential candidates of political parties with ballot status under sec. 5.62. The statute further provides that the committee has the sole discretion to determine that, ". . . such candidates candidacy is generally advocated or recognized in the national news media throughout the United States." The selection committee has interpreted this to mean that if a candidate's candidacy is not recognized or advocated in the national news media, the candidate's name should not be certified for placement on the presidential preference ballot. The statute, however, is silent as to how or when the selection committee is to use its finding regarding national news media recognition, or the lack thereof. The statute does not indicate that someone whose presidential candidacy is not generally advocated or recognized in the national news media is to be kept off the ballot. The statute is equally silent as to what constitutes national news media, whether it is print or broadcast media and what publications or broadcasts are national in scope. Furthermore, the statute does not spell out what constitutes advocacy or recognition in the national news media, i.e., whether it is news articles, editorial endorsements or paid political advertisements. In short, the statute is ambiguous.

Where a statute does not define the precise scope of its application, reference may be made to the history of the statute and other matters beyond the statutory language to determine its purpose and effect. *State v. White,* 97 Wis. 2d 193, 199, 295 N.W.2d 346 (1980). Similarly, when a statute is not clear on its face as to its meaning, this court in construing it will look to the legislative intent. *State ex rel. Gutbrod v. Wolke,* 49 Wis. 2d 736, 742, 183 N.W.2d 161 (1971). The legislative intent can sometimes be discerned through the

legislative history of the statute. *See, Nekoosa-Edwards Paper Co. v. Public Service Comm.,* 8 Wis. 2d 582, 591, 99 N.W.2d 821 (1959). Unfortunately, the Legislative Reference Bureau's file on sec. 8.12(1)(a), Stats., enacted as ch. 90, Laws of 1967, is not helpful. Nothing in the drafting file or legislative history of the statute reveals what the legislature's intent was in adopting the national news media recognition test.

The petitioners assert that Senator Fred A. Risser, one of the drafters of the statute and, as a member of the selection committee, one of the respondents in this case, has stated that the legislature's purpose in enacting the national news media recognition test was to prevent "favorite son" candidacies which could disrupt the nominee selection process at the national political party conventions. It is inappropriate, however, for a court to rely on the statements of a member of the legislature as to what the legislature intended when enacting a statute. *See, State v. Consolidated Freightways Corp.,* 72 Wis. 2d 727, 738, 242 N.W.2d 192 (1976) ; *Wisconsin Southern Gas Co. v. Public Service Comm.,* 57 Wis. 2d 643, 652, 205 N.W.2d 403 (1973) ; and *Cartwright v. Sharpe,* 40 Wis. 2d 494, 508–09, 162 N.W.2d 5 (1968).

Nevertheless, even assuming that the purpose of the national news media recognition test is to avoid favorite son candidacies, such purpose is not served by keeping the name of the sole presidential candidate of a political party which has itself achieved ballot status, off the presidential preference ballot. A favorite son running against truly national candidates in a contested intra-party race, and to whom delegates are pledged as a function of the votes cast in the presidential preference vote, could, at least theoretically thwart the purpose of the presidential preference vote because such a candidate might lead a virtually uninstructed delegation from the state to the national convention. That is not true in the

instant situation where Hart is the sole presidential candidate of the Labor and Farm Party, especially since that party is not, according to the petitioners, even contemplating holding a national convention.

Other reasons which could be offered to explain the legislatures' intent in enacting the national news media recognition test similarly do not withstand analysis in the situation where the political party seeking to place its candidate's name on the presidential preference ballot has only one candidate. Legitimate state purposes for restricting access to the ballot such as regulating ballot size and screening out frivolous candidates, are not served by applying the national news media recognition test to Hart or other candidates in his position of being the sole candidate of a political party already on the presidential preference ballot.[5] Because the Labor and Farm Party already has a place on the ballot, keeping Hart's name off as candidate of that party would do nothing to shorten the ballot. Likewise, it is doubtful that a political party that has achieved ballot status would squander its election opportunities by presenting a wholly frivolous candidate as the party's sole candidate for the presidential preference election. But, in any event, the political party (and its voters), not the state acting through its statutory presidential preference selection committee, has the primary voice in saying who its candidates should be. *See, Cousins v. Wigoda,* 419 U.S. 477, 487 (1975) and *United States v. Wisconsin ex*

---

[5] We express no opinion as to the validity of the statutory national news media recognition test applied in other situations. We are concerned here only with this particular situation where the only presidential candidate of a party with ballot status has been kept off the presidential preference ballot by the application of this test. It is to be hoped, however, that in the almost four years before the selection committee next convenes, the legislature will act to remedy some of the more obvious defects in the statute.

*rel. La Follette,* 450 U.S. 107 (1981).

We conclude that the legislature did not intend that the national news media recognition test of sec. 8.12(1) (a), Stats., should be applied to a candidate in Hart's position. To do so would be unreasonable. This court is obligated to avoid unreasonable or absurd results when construing statutes. *State v. Burkman,* 96 Wis. 2d 630, 292 N.W.2d 641 (1980).

Accordingly, we conclude that the national news media recognition test of sec. 8.12(1) (a) does not apply to the candidacy of William Osborne Hart who is the sole presidential candidate of the Labor and Farm Party. Although *mandamus* does not lie to compel the manner in which a government body or office exercises statutorily conferred discretion, *State ex rel. Ahlgrimm v. State Elections Board,* 82 Wis. 2d 585, 597, 263 N.W.2d 152 (1978), the statute in question here does not state that placing a candidate's name on the ballot is a discretionary act of the selection committee. We direct that the name of William Osborne Hart be placed on the presidential preference ballot as the Labor and Farm Party's candidate for the office of president of the United States.

HEFFERNAN, C.J., took no part.