Eugene McCARTHY, Larry Agran, Lyndon H. LaRouche, Jr., David E. Duke, David Wirtz, Michael Johnson, William Spransy, Ruth E. Brown, Stephen Hauser and Emmanuel L. Branch, Petitioners,†

DEMOCRATIC PARTY OF WISCONSIN, Petitioner-Intervenor,

v.

ELECTIONS BOARD, State of Wisconsin, 1992 Presidential Preference Selection Committee, State of Wisconsin, Gordon Baldwin, in his official capacities as Chair of the Elections Board and as Chair of the 1992 Presidential Preference Selection Committee; David Opitz, Helen Bie, Michael Grebe, Jeffrey Neubauer, Paula Dorsey, Larry Longley, Fred A. Risser, Michael Ellis, Walter J. Kunicki and David Prosser in their official capacities as members of the 1992 Presidential Preference Selection Committee, Respondents,

REPUBLICAN PARTY OF WISCONSIN, Respondent-Intervenor.

Supreme Court

*No. 92-0348-OA. Oral argument February 28, 1992.—Decided March 2, 1992.*

(Also reported in 480 N.W.2d 241.)

†Motion for reconsideration denied on April 7, 1992.

For the petitioners there were briefs by *Cheryl R. Weston* and *Cullen, Weston, Pines & Bach,* Madison and oral argument by *Cheryl R. Weston.*

For the respondents there were briefs and oral argument by *Alan Lee,* assistant attorney general with whom on the briefs was *James E. Doyle,* attorney general.

For the Republican party of Wisconsin and David Opitz there were briefs by *Thomas L. Shriner, Michael B. Brennan* and *Foley & Lardner,* Milwaukee and oral argument by *John R. Dawson.*

For the Democratic Party of Wisconsin there were briefs by *Robert H. Friebert* and *Freibert, Finerty & St. John,* Milwaukee and oral argument by *Robert H. Friebert.*

For Emmanuel L. Branch there were briefs and oral argument by *Emmanuel L. Branch,* Dodgeville.

PER CURIAM.

The court is again asked to exercise its original jurisdiction to review the decision of the presidential preference selection committee and issue a *writ of man-*

*damus* directing the respondent Elections Board to place names on the ballots of political parties in the presidential preference election. We conclude, as we did in *Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 344 N.W.2d 177 (1984), that this matter is *publici juris* and we exercise our original jurisdiction. We deem the allegations contained in the petition and the denials contained in the response are sufficient to stand as the complaint and answer in this original action. Because we conclude that the 1992 Presidential Preference Selection Committee failed to demonstrate that it exercised discretion in applying the statutory standard to David Duke, a declared candidate, and exercised no discretion with respect to five others seeking ballot placement, we direct that the names of those six candidates be placed on the presidential preference ballot as candidates of their respective political parties for the office of president of the United States.

A petition for leave to commence an original action was filed by four persons who had sought placement on the 1992 Wisconsin presidential preference ballot—Eugene McCarthy, Larry Agran, Lyndon H. LaRouche, Jr. and David E. Duke—and five persons eligible and intending to vote in the presidential preference election. Thereafter, the court permitted Emmanuel L. Branch to join the proposed action as a petitioner.[1]

---

[1]On February 26, 1992, one of the original petitioners filed a "special petition" asking that the name of Harold E. Stassen be included in the names of candidates sought to be placed on the Republican presidential preference ballot. Because our order directs the placement of the names of all candidates who have sought ballot placement in this action, including Mr. Stassen, it is unnecessary that we act on the petition, which was not signed by the purported petitioner or anyone on his behalf but by the attor-

The Republican Party of Wisconsin and the Democratic Party of Wisconsin each filed a petition for leave to intervene in the proposed action. We grant those requests but, because of the time constraint in deciding the issues presented and granting effective relief,[2] we limit that intervention to the facts and issues presented by the original petitioners and respondents. This limitation has in no way impaired the ability of either intervenor to protect its interest, as each has filed written arguments, which have been considered by the court, and has, with leave of the court, participated in oral argument.

The relevant facts are not disputed. As disclosed by the minutes of its January 28, 1992 meeting, the 1992 Presidential Preference Selection Committee elected Professor Gordon Baldwin its chairman, pursuant to sec. 8.12(1)(b), Stats.,[3] and unanimously adopted a motion to

ney for Mr. Stassen and was filed "subject to the consent" of the original petitioners' attorney, whose consent has not been communicated to the court.

[2] The court is informed that on March 3, 1992 the Elections Board will send to the county clerks a list of the names to be printed on the presidential preference ballot. The election will be held April 7, 1992 and the law requires each county clerk to have the official ballot prepared and to distribute them to the municipal clerks no later than 22 days before the date of the election. Section 7.10(3)(a), Stats.

[3] Section 8.12(1)(b), Stats. provides:

On the last Tuesday in January in each year in which electors for president and vice president are to be elected, there shall be convened in the capitol a committee consisting of, for each party filing a certification under this subsection, the state chairman of that state party organization or the chairman's designee, one national committeeman and one national committeewoman designated by the state chairman; the speaker and the minority leader of the assembly or their designees, and the president and the minority leader of the senate or their designees. All designations shall be made in writing to

place the names of Patrick Buchanan and George Bush on the Republican presidential preference ballot and the names of Edmund G. Brown, Bill Clinton, Tom Harkin, J. Robert Kerrey and Paul E. Tsongas on the Democratic presidential preference ballot. The minutes state that the Selection Committee then had "considerable discussion" on a motion by the Democratic National committeewoman, seconded by the Democratic National committeeman, to place the name of David E. Duke on the Republican ballot. Following that discussion, which is not described in the minutes, the motion was defeated: the chairman of the Republican Party of Wisconsin, the Republican National committeewoman, the Republican National committeeman, the minority leader of the Wisconsin Senate, the minority leader of the Wisconsin Assembly and the Selection Committee chairman voted against the motion; the Democratic National committeewoman, the Democratic National committeeman, the chairman of the Democratic Party of Wisconsin, the president of the Wisconsin Senate and the speaker of the Wisconsin Assembly voted in favor of the motion. Following the vote on that motion, the Selection Committee adjourned. The following day, the Selection Committee

the board. This committee shall organize by selecting an additional member who shall be the chairman and shall determine, and certify to the board no later than on the Friday following the last Tuesday in January, the names of all candidates of the political parties represented on the committee for the office of president of the United States. The committee shall place the names of all candidates whose candidacy is generally advocated or recognized in the national news media throughout the United States on the ballot, and may, in addition, place the names of other candidates on the ballot. The committee shall have sole discretion to determine that a candidacy is generally advocated or recognized in the national news media throughout the United States.

Section 8.12, Stats., is set out in its entirety in the Appendix to this opinion.

487

chairman certified to the State Elections Board the names the Selection Committee had unanimously voted to be placed on the primary ballot.

At its meeting, the Selection Committee had been provided written information from the Wisconsin Legislative Reference Bureau and the Elections Board concerning possible 1992 presidential candidates and persons who had expressed a desire to be on the 1992 Wisconsin presidential preference ballot. The names of David Duke and Harold E. Stassen appeared among the names of persons who had declared Republican candidacy and the name of Eugene McCarthy appeared on the list of persons having expressed a desire to be on the Wisconsin ballot. Each of the remaining petitioners, Larry Agran, Lyndon H. LaRouche, Jr. and Emmanuel Branch, had informed the Selection Committee, directly or indirectly, of his interest in being placed on the ballot.

The issue presented for determination is whether the Selection Committee properly exercised its statutory discretion in not certifying to the Elections Board the names of Eugene McCarthy, Larry Agran and Lyndon H. LaRouche, Jr. for placement on the 1992 presidential preference primary ballot of the Democratic Party and the names of David E. Duke, Emmanuel L. Branch and Harold E. Stassen for placement on the 1992 presidential preference primary ballot of the Republican Party.

Section 8.12(1)(b), Stats., directs the Selection Committee "to determine and certify to the [Elections Board] . . . the names of all candidates of the political parties represented on the committee for the office of president of the United States." It also directs the Selection Committee to "place the names of all candidates whose candidacy is generally advocated or recognized in the national news media throughout the United States on the ballot."

The statute further gives the Selection Committee discretion: (1) to determine the names of all candidates whose candidacy is "generally advocated or recognized in the national news media throughout the United States" and (2) "to place the names of other candidates on the ballot." Once it determines that a candidate's candidacy satisfies the news media advocacy or recognition standard, the Selection Committee must certify the name of that candidate for placement on the ballot. There is no statutory standard applicable to the "other candidates" category.

In reviewing the Selection Committee's actions here, we determine only whether the Selection Committee abused its discretion. Here, there is no evidence that the Selection Committee applied the news media advocacy or recognition standard to the candidacy of David Duke. No transcript of the Selection Committee meeting is in the record. The record contains the minutes of that meeting, which merely state, "Considerable discussion of Wisconsin law, and the United States Constitution followed the motion [to place Duke's name on the Republican ballot]."

In their briefs, the parties assert that much of the discussion concerned Mr. Duke's acceptability to the Republican Party as its candidate but nothing in the record indicates, much less establishes, that the Selection Committee's decision not to certify Mr. Duke's name for ballot placement was based on that consideration or on any other. Moreover, and more importantly, there is no evidence that it was based on the Selection Committee's having properly applied the statutory standard of media advocacy or recognition to Mr. Duke's candidacy. Thus, we conclude that the Selection Com-

mittee abused its discretion in reaching its decision not to certify Mr. Duke's name for placement on the Republican presidential preference ballot.

■

The Selection Committee gave no consideration at all to the other persons who had declared their candidacy as Republican or Democrat for U.S. President or expressed to the Selection Committee their desire to be placed on the preference ballot of either of those parties. The Selection Committee did not consider whether any of these candidates should be placed on the preference ballot either under the news media advocacy or recognition standard or as "other candidates." The Selection Committee's failure to exercise at all the discretion conferred upon it by statute constitutes an abuse of that discretion.

■

The law governing the selection of names for ballot placement in the presidential preference election is inclusionary, not exclusionary. While requiring ballot placement of the name of each candidate whose candidacy the Selection Committee determines meets the news media recognition advocacy or recognition test, the statute gives the Selection Committee broad discretion to certify other candidates for ballot placement. The proper exercise of the Selection Committee's discretion does not permit it to ignore the names of persons known to have declared their candidacy of the Republican, the Democratic or any other party for the office of U.S. President or who had expressed to the Selection Committee interest in being placed on the preference ballot.

■

Wisconsin conducts an "open" primary to give its voters "an opportunity to express their preference for the person to be the presidential candidate [of the politi-

cal parties participating in the election]." Section 8.12(1)(a), Stats. The "openness" derives from the fact that voters are not required to declare publicly a preference for one of the political parties or to have that preference publicly recorded. The voters are given the ballot of each participating political party and in the privacy of the voting booth they mark their preference on the ballot of their choice.

██

The purpose of the Wisconsin primary is clear.

> For over seventy-five years this state has conducted primary elections in the belief that the primary wrests the control over the selection of candidates from party bosses, caucuses and conventions and puts the control where it belongs—with the people of the state and that the open presidential preference primary (compared to a closed primary) increases the opportunity of the citizens of this state to participate at a critical stage of the process of electing a President. *State ex rel. LaFollette v. Democratic Party,* 93 Wis. 2d 473, 482, 287 N.W.2d 519 (1980). *See also, Id.,* 492–93.

In order to accomplish that purpose the legislature refrained from giving any participating political party the power to veto the placement on its ballot of a person claiming to be its candidate.

The tradition of the open primary in Wisconsin has continued to the present, albeit with a significant modification. Wisconsin law no longer binds delegates to the national convention of a political party by the results of the presidential preference election. In *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 67 L. Ed. 2nd 82, 101 S. Ct. 1010 (1981), the U.S. Supreme Court struck down Wisconsin's former requirement that the results of the presidential prefer-

ence election determine the allocation of votes cast for a candidate by Wisconsin's delegates at a party's national convention. It did so for the reason that the Wisconsin "open" primary permitted persons to vote who did not publicly declare their party affiliation and, as a result, the effect of the binding nature of primary results impermissibly interfered with the national party's conduct of its affairs. Now, the Wisconsin presidential preference election is non-binding; whatever binding effect the results of that election may have are wholly determined by the participating political parties themselves under their rules.

Because we conclude that the Presidential Preference Selection Committee abused its discretion under sec. 8.12(1)(b), Stats., with respect to the persons before us and because time does not permit remand to the Selection Committee for the proper exercise of discretion in respect to them, we direct that the names of Eugene McCarthy, Larry Agran and Lyndon H. LaRouche, Jr., be placed on the 1992 Democratic presidential preference ballot as candidates for the office of president of the United States and that the names of David E. Duke, Emmanuel L. Branch and Harold E. Stassen be placed on the 1992 Republican presidential preference ballot as candidates for the office of president of the United States.

## APPENDIX

**8.12 Presidential preference vote. (1)** Selection of names for ballot. (a) No later than 5 p.m. on the first Tuesday in January, or the next day if Tuesday is a holiday, in each year in which electors for president and vice president are to be elected, the state chairperson of each recognized political party listed on the official ballot at the last gubernatorial

election whose candidate for governor received at least 10% of the total votes cast for that office may certify to the board that the party will participate in the presidential preference primary. For each party filing such a certification, the voters of this state shall at the spring election be given an opportunity to express their preference for the person to be the presidential candidate of that party.

(b) On the last Tuesday in January in each year in which electors for president and vice president are to be elected, there shall be convened in the capitol a committee consisting of, for each party filing a certification under this subsection, the state chairman of that state party organization or the chairman's designee, one national committeeman and one national committeewoman designated by the state chairman; the speaker and the minority leader of the assembly or their designees, and the president and the minority leader of the senate or their designees. All designations shall be made in writing to the board. This committee shall organize by selecting an additional member who shall be the chairman and shall determine, and certify to the board no later than on the Friday following the last Tuesday in January, the names of all candidates of the political parties represented on the committee for the office of president of the United States. The committee shall place the names of all candidates whose candidacy is generally advocated or recognized in the national news media throughout the United States on the ballot, and may, in addition, place the names of other candidates on the ballot. The committee shall have sole discretion to determine that a candidacy is generally advocated or recognized in the national news media throughout the United States.

(c) No later than 5 p.m. on the 3rd Tuesday in February of each presidential election year, any person seeking the nomination by the national conven-

tion of a political party filing a certification under this subsection for the office of president of the United States, or any committee organized in this state on behalf of and with the consent of such person, may submit to the board a petition to have the person's name appear on the presidential preference ballot. The petition may be circulated no sooner than the last Tuesday in January of such year and shall be signed by a number of qualified electors equal in each congressional district to not less than 1,000 signatures nor more than 1,500 signatures. The form of the petition shall conform to the requirements of s.8.40. All signers on each separate petition paper shall reside in the same congressional district.

(d) The board shall forthwith contact each person whose name has been placed in nomination under par. (b) and notify him or her that his or her name will appear on the Wisconsin presidential preference ballot unless he or she files, no later than 5 p.m. on the 3rd Tuesday in February of such year, with the board, a disclaimer stating without qualification that he or she is not and does not intend to become a candidate for the office of president of the United States at the forthcoming presidential election. The disclaimer may be filed with the board by certified mail, telegram or in person.

(2) Ballots. The form of the official ballots shall be prescribed by the board under s.5.60(8).

(3) Reporting of results. No later than May 15 following the presidential preference vote, the board shall notify each state party organization chairperson under sub. (1)(b) of the results of the presidential preference vote cast within the state and within each congressional district.

LOUIS J. CECI, J. *(dissenting).* I dissent from the *per curiam* opinion filed this date for the following reasons.

The review sought by the petitioners is governed by the common-law writ of certiorari in which the scope of the review is limited to the issues of whether the actions by the respondents were arbitrary or capricious or in excess of the Selection Committee's legal authority. As stated in *Federated Elec. v. Kessler,* 131 Wis. 2d 189, 206, 388 N.W.2d 553 (1986):

> In certiorari review, the reviewing court is limited to determining: (1) whether the [committee] kept within its jurisdiction; (2) whether it acted according to law; (3) whether its actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

In a certiorari case, the court is not allowed to consider matters outside the record. *State ex rel. Kaczkowski v. Fire & Police Comm.,* 33 Wis. 2d 488, 504, 148 N.W.2d 44 (1967).

This court has held that mandamus does not lie to compel the manner in which a government body or office exercises statutorily conferred discretion. *State ex rel. Ahlgrimm v. State Elections Bd.,* 82 Wis. 2d 585, 597, 263 N.W.2d 152 (1978), *cited with approval in Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 358, 344 N.W.2d 177 (1984). To the extent the Selection Committee's decision not to place the petitioner aspirants, or some of them, on the ballot through this method represented an exercise of the committee's discretion under the statute, mandamus is not an available remedy.

This court's review in this case, therefore, is strictly limited to the issues of whether the Selection Committee acted outside its grant of authority from the legislature and whether the committee committed any errors of law

in reaching its decision. Any other considerations result in this court's improperly grasping political decisions without basis in law. This court should not appropriate to itself the functions of a political supercommittee. I conclude that the Selection Committee's decision not to place the names of the six petitioners on the ballot was an exercise of statutorily conferred discretion. The Selection Committee is not a dancing bear, required to perform the steps only as this court or anyone else might insist. Therefore, this court cannot compel the manner in which the Selection Committee exercises its discretion. The court has no authority to take the actions mandated by the majority opinion and thereafter set a course that can be perceived as a forum for political mischief.

The Presidential Preference Selection Committee is a legislatively created *political body.* It is composed of representatives of Wisconsin's political parties who have met the requirements of the statute in garnering the requisite number of votes at the previous gubernatorial election. The legislature intended that the committee make political decisions and therefore constituted the committee with individuals active in partisan political affairs, people who would therefore be knowledgeable about state and national political affairs.

The citation to *State ex rel. LaFollette v. Democratic Party,* 93 Wis. 2d 473, 287 N.W.2d 519 (1980), is simply a ploy on the part of the majority in its vain attempt to lend credibility to its position. One does not need to be a political activist to recognize that by the composition of the Selection Committee, the legislature directed the committee to make political decisions. The open primary was the thrust of the *LaFollette* case. Wisconsin does indeed have an open primary, and the statutes under consideration in this case clearly do nothing

496

to frustrate either the spirit or operation of an open primary. Nothing contained within sec. 8.12, Stats., either hinders or impedes the operation of our open primary system. Further, this legislation recognizes the possibility that some erstwhile ballot position-seeker would not be recognized by a majority of the Sélection Committee and provided that any person may become a candidate for political office by merely filing a petition with the appropriate number of signatures.

Section 8.12(1)(b), Stats., provides in part:

> The committee shall place the names of all *candidates* whose candidacy is generally advocated or recognized in the national news media throughout the United States on the ballot, and may, in addition, place the names of other *candidates* on the ballot. The committee shall have sole discretion to determine that a candidacy is generally advocated or recognized in the national news media throughout the United States.

(Emphasis added.) The wording of sec. 8.12(1)(b) first requires that the committee determine who are the *candidates* of the political parties *represented on the committee.* I conclude that the legislature's use of the word *candidates* in sec. 8.12(1)(b) was purposeful and that the word *candidates* does not mean all *persons purporting to be candidates.* Section 8.12 only requires that the committee place on the ballot the names of candidates who meet the judgment call by the committee that said candidates meet the national news media criteria essential to their having a place on the ballot. Section 8.12 does not require that the committee place on the ballot the names of all *persons* who are purporting to be candidates of a particular party.

497

There can be no clearer statement of the legislative purpose than the last sentence of sec. 8.12(1)(b), Stats.: "The committee shall have *sole discretion* to determine that a candidacy is generally advocated or recognized in the national news media throughout the United States" (emphasis added). The legislature has delegated to the committee the task of deciding, in its sole discretion, the names of the *candidates* whose candidacies are generally advocated or recognized in the national news media throughout the United States. Even a cursory reading of the minutes of the committee meeting reveals that they did just that.

Seven candidates were placed on the respective ballots by unanimous consent, and, after considerable discussion on the motion made by a Democrat to place David Duke's name on the Republican ballot *through this method,* the motion was defeated. That decision cannot be considered arbitrary or capricious or an abuse of discretion. The placement of David Duke's name on the ballot as a Republican was proposed and supported in strenuous argument *only* by the representatives of the Democratic party, and *only* representatives of the Democratic party recognized David Duke as being a Republican candidate.

The statute does not require placing a person's name on the ballot once some specified quantum of national recognition is reached. The statute leaves the questions of relevance and sufficiency of the evidence to the Selection Committee. The failure to nominate all of those individuals whose names were not placed on the ballot was a judgment call by a majority of the Selection Committee that those persons were not individuals "whose candidacy is generally advocated or recognized in the national news media throughout the United States . . .." The legislature granted broad discretion to this

498

committee and specified by the offices the committee members hold that they would be knowledgeable about national and state political affairs.

Furthermore, the statute itself provides an alternative method whereby all of the persons granted relief today could have obtained ballot placement. Under sec. 8.12(1)(c),[1] a *person* seeking the nomination by the national convention of either the Republican Party or the Democratic Party for the office of president, or any committee organized in Wisconsin on behalf of and with the consent of such person, may submit to the elections board a petition for ballot placement, with the requisite number of signatures. The petition procedure applies to a *person* seeking the nomination for the office of president. Thus, it is an alternative for obtaining placement on the primary ballot for those whom the Selection Committee has determined under sec. 8.12(1)(b), Stats., are not party *candidates* entitled to or worthy of ballot placement. In the absence of evidence that any of the persons granted relief today attempted to take advantage

---

[1]Section 8.12(1)(c), Stats., provides as follows:

**8.12 Presidential preference vote. (1)** Selection of names for ballot . . ..

. . .

(c) No later than 5 p.m. on the 3rd Tuesday in February of each presidential election year, any person seeking the nomination by the national convention of a political party filing a certification under this subsection for the office of president of the United States, or any committee organized in this state on behalf of and with the consent of such person, may submit to the board a petition to have the person's name appear on the presidential preference ballot. The petition may be circulated no sooner than the last Tuesday in January of such year and shall be signed by a number of qualified electors equal in each congressional district to not less than 1,000 signatures nor more than 1,500 signatures. The form of the petition shall conform to the requirements of s.8.40. All signers on each separate petition paper shall reside in the same congressional district.

of the petition procedure, I would further decline to substitute this court's political judgment for that of the Selection Committee.

Had the majority used the proper standard of review, which is by certiorari rather than mandamus, it is clear that of necessity they would have found that the Presidential Preference Selection Committee acted properly in that (1) it kept within its jurisdiction; (2) it acted according to law; (3) its actions were not arbitrary, oppressive, or unreasonable and did in fact represent its judgment; and (4) the evidence was such that it might have reasonably made the determinations it made.

I therefore dissent. I am authorized to state that Justices William G. Callow and Donald W. Steinmetz join in this dissenting opinion.