In the Matter of the Guardianship of James D.K.:

Robin K., Appellant-Petitioner,

v.

Lamanda M., Respondent.

Supreme Court

*No. 2004AP767. Oral argument October 6, 2005. —Decided June 13, 2006.*

2006 WI 68

(Also reported in 718 N.W.2d 38.)

For the appellant-petitioner there was a brief by *Alan J. White* and *Helland Law Offices,* Wisconsin Dells, and oral argument by *Alan J. White.*

For the respondent there was a brief by *Katherine E. Campbell* and *LaRowe, Gerlach & Roy, S.C.,* Reedsburg, and oral argument by *Katherine E. Campbell.*

¶ 1. LOUIS B. BUTLER, JR., J. Robin K. ("Robin") seeks review of an unpublished court of appeals' decision that affirmed an order of the circuit court for Sauk County, Honorable James Evenson, denying Robin's petition for guardianship of James D. K. ("James").[1] *Robin K. v. Lamanda M.*, 2004AP767, unpublished slip op., ¶ 1 (Wis. Ct. App. Nov. 11, 2004).

¶ 2. At issue in this case is the proper standard a circuit court must impose in considering a guardianship petition involving a minor when a parent objects, pursuant to Wisconsin Statutes Chapter 880 (2003–04).[2] Robin asserts that the circuit court and the court of appeals erred in denying her the guardianship appointment.

¶ 3. We conclude that when a parent objects, a court is authorized under chapter 880 to appoint a nonparent as guardian of a minor if there exist extraordinary circumstances affecting the health or safety of the minor. We further conclude that the record does not support a finding that the required extraordinary circumstances exist in the present case. Accordingly, we affirm the decision of the court of appeals.[3]

---

[1] Robin is James's great aunt.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[3] Although we affirm the court of appeals, we do so on other grounds.

The court of appeals ruled that because Robin failed to assert that Lamanda was an unfit mother, Robin failed to meet the *Barstad* standard. *Barstad v. Frazier,* 118 Wis. 2d 549, 568, 348 N.W.2d 479 (1984).

*Barstad* examined the constitutional implications of a custody dispute between a parent and a nonparent third party. *Id.* at 562. The court recognized "[t]he fundamental liberty interest of natural parents in the care, custody, and management of

I

¶ 4. Robin filed a petition for guardianship of James on November 5, 2003, under chapter 880 of the

their child," *id.*, and established criteria constitutionally required in custody disputes between parents and nonparents:

> [A] parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party.

*Id.* at 568.

The present case involves the application of Wis. Stat. § 880.03 to a dispute over guardianship between a parent and a nonparent, which may present different concerns than other guardianships. *See Howard M. v. Jean R.*, 196 Wis. 2d 16, 539 N.W.2d 104 (Ct. App. 1995). The statute grants courts the authority to appoint a guardian if there exist "extraordinary circumstances requiring medical aid or the prevention of harm to his or her person or property." *Id.*

We note that there may be similarities between the statutory requirement that a court find "extraordinary circumstances requiring medical aid or the prevention of harm to his or her person," Wis. Stat. § 880.03, and the *Barstad* requirement that a court find "[c]ompelling reasons includ[ing] abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child," *Barstad,* 118 Wis. 2d at 568. Because we conclude that Robin has failed to meet the statutory requirements under Wis. Stat. § 880.03, we decline to reach the constitutional concerns raised in *Barstad,* or whether the statutory requirements concerning "extraordinary circumstances" are essentially the same as the constitutionally required "compelling reasons." We do not normally decide constitutional questions if the case can be resolved on other grounds. *Labor & Farm Party v. Elections Bd.,* 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984).

Wisconsin Statutes.[4] In the petition, Robin alleged that (1) James had been living with her for the past two and one-half years; (2) both parents had little contact with the child; and (3) both parents were unable to give proper care to James. According to Robin, the guardianship was necessary to allow her to obtain essential services for the child, including medical services, particularly when James traveled with Robin to other states.

¶ 5. James was three years old when the guardianship petition was filed. Robin contends that she had primary responsibility for the care and welfare of James for the vast majority of his life. Robin alleges James had been living with her since he was six months old. According to Robin, Lamanda M. ("Lamanda"), James's mother, refused to financially support her son during the two-and-a-half years prior to the filing of the petition. Robin further asserts that Lamanda voluntarily allowed Robin to care for James up until the point that Robin filed for guardianship.[5]

¶ 6. Lamanda opposed the petition.[6] Lamanda contends that Robin misrepresents the amount of time

---

[4] We note that in her November 5, 2003 petition, Robin asked the court to appoint her as James's permanent guardian. However, on November 13, 2003, Robin also filed a petition for temporary guardianship of James. Although the record fails to clarify the nature of the guardianship at issue in this case, we determine that the circuit court addressed Robin's request as a request for permanent guardianship. We draw this conclusion because the circuit court noted its concern that the guardianship statutes "have no seeming end;" yet, by law, a temporary guardianship can last no longer than 120 days. Wis. Stat. § 880.15.

[5] According to Robin's affidavit, upon filing for guardianship, James was removed from Robin's care.

[6] We presume for purposes of this appeal that James's father, William L. ("William"), did not oppose the petition. The

James truly spent with Robin. Lamanda observes that the circuit court only *assumed,* for purposes of the decision, that Robin spent a great deal of time with James and made no finding as to the amount of time Robin *actually* spent with the child.

¶ 7. On December 3, 2003, a hearing was held on Robin's petition for guardianship in Sauk County Circuit Court before the Honorable James Evenson. The guardian ad litem appointed to represent James recommended that the guardianship be granted to Robin. At the hearing, Lamanda asserted that she allowed James to visit with Robin periodically and to go on trips to California at Robin's request. Lamanda disputed Robin's contention that Robin was the primary caregiver for James:

> I never thought that I couldn't take care of my son. That's not why I let [Robin] take [James] to California and keep him over night. She would ask me if I would let her take him to California. And, at first, I would let him go. And then, when she was here, she would want to take him for a few days or for a week and I would agree with it, because he likes going over there. I wasn't—that was my family. She was my aunt. I trusted her. I remember going over there when I was a young girl and I would like playing out in the yard and going fishing and going swimming. That's the only

---

sparse record indicates that William planned to nominate Robin K. as the guardian of James D. K. because he was "unable to perform the duties of a guardian at the present time." The record from the hearing includes only hand-written notes from the clerk and indicates that William testified over the phone. We have no additional information as to the content of William's testimony. The trial court record before this court bears no reference to William's decision not to oppose the petition.

reason I let him go over there. I never once thought I wasn't capable enough of taking care of my son.

¶ 8. The circuit court denied Robin's petition for guardianship. The court indicated that it had difficulty with the guardianship statutes in that they did not seem to be designed for a case like the present case. The court expressed concern that the guardianship statutes offered no guidance on commencing a guardianship action, and no standards concerning when and how a guardianship should end.

¶ 9. The circuit court concluded that there was no evidence that Lamanda neglected her children, and that the fact that Human Services had not taken the other children from the home was tacit approval that home placement was appropriate, subject to certain programming. Therefore, the circuit court rejected the recommendation of the guardian ad litem and denied the petition for guardianship.

¶ 10. Robin appealed the circuit court's decision. On appeal, Robin asserted that the parental preference established by Wis. Stat. § 880.09(2)[7] required the circuit court to appoint a guardian if the court found James's parents "unsuitable and unwilling" to care for James. Robin further asserted that Lamanda was unsuitable. In contrast, Lamanda argued that the court must apply the higher standard of "unfitness" under

---

[7] That section reads as follows:

(2) PREFERENCE. If one or both of the parents of a minor, a developmentally disabled person or a person with other like incapacity are suitable and willing, the court shall appoint one or both of them as guardian unless the proposed ward objects. The court shall appoint a corporate guardian under s. 880.35 only if no suitable individual guardian is available.

Wis. Stat. § 880.09(2).

*Barstad v. Frazier,* 118 Wis. 2d 549, 348 N.W.2d 479 (1984).[8]

¶ 11. The court of appeals affirmed the circuit court, concluding that in a guardianship proceeding between a nonparent and a parent, the parent must be proven "unfit" consistent with the standard set forth in *Barstad. Robin K.,* 2004AP767, unpublished slip op., ¶¶ 1, 3–4. Robin seeks review, and we affirm.

## II

¶ 12. This case presents mixed questions of fact and law, including questions of statutory interpretation. A circuit court's decision on whether to appoint a guardian involves a determination by the court based on the court's review of the facts of the case. *See Anna S. v. Diana M.,* 2004 WI App 45, ¶ 7, 270 Wis. 2d 411, 678 N.W.2d 285. Such a determination is within the discretion of the circuit court judge. *Id.* We give deference to the circuit court's factual findings unless clearly erroneous. *Howard M. v. Jean R.,* 196 Wis. 2d 16, 20, 539 N.W.2d 104 (Ct. App. 1995). Therefore, "[w]e affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result." *Anna S.,* 270 Wis. 2d 411, ¶ 7 (citing *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)). Although the

---

[8] In *Barstad,* this court concluded:

> the rule to be followed in custody disputes between parents and third parties is that a parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party.

*Barstad,* 118 Wis. 2d at 568.

circuit court's factual determinations and discretionary decisions are given deference, "[w]hether the circuit court applied the correct legal standard in exercising its discretion presents a question of law, which we review de novo." *Id.* (citing *F.R. v. T.B.,* 225 Wis. 2d 628, 637, 593 N.W.2d 840 (Ct. App. 1999)).

¶ 13. We also review statutory interpretation de novo. *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315. The purpose of statutory interpretation is to give the statute its full, proper, and intended effect. *Id.* (citation omitted). "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." *Id.* We refrain from interpreting statutory language in isolation and interpret the language in the context in which it is used to avoid absurd or unreasonable results. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning is plain from the language of the statute, we ordinarily stop the inquiry. *Reed,* 280 Wis. 2d 68, ¶ 13 (citation omitted).

### III

¶ 14. In this action, we are asked to determine the appropriate standard for a circuit court to use in deciding whether to appoint a nonparent as a guardian for a minor under chapter 880 when the minor's parent objects.[9] The case requires us to review chapter 880 in

[9] When a nonparent files a petition for guardianship over the objections of the child's parent, the nonparent is asking the court to grant the third party the right to make decisions regarding the "care, custody and control" of the child. Wis. Stat.§ 880.01(3). Because the appointment of a guardian for a minor over the objections of a parent gives major decision-making authority to a

general, focusing on the application of Wis. Stat. § 880.03[10] in particular.

¶ 15. Chapter 880 codifies certain guardianships for children in Wisconsin.[11] Under chapter 880, when a court appoints a guardian for a minor, that guardian is entrusted with the "care, custody and control" of the

non-parent regarding how the child will be raised, decisions usually reserved for a child's parent(s), a guardianship appointment of a nonparent implicates the constitutionally protected rights of parents. *Troxel v. Granville*, 530 U.S. 57, 72–73 (2000) (concluding that due process prevents a state from infringing on the "fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made.") (citations omitted). Because we resolve this matter on statutory grounds in the parent's favor, we decline to reach the constitutional issues otherwise implicated here.

[10] Section 880.03 reads:

> Persons and estates subject to guardianship. All minors, incompetents and spendthrifts are subject to guardianship. The court may appoint a guardian of the person of anyone subject to guardianship who is also a resident of the county, or of a nonresident found in the county, under extraordinary circumstances requiring medical aid or the prevention of harm to his or her person or property found in the county. The court may appoint a guardian of the estate of anyone subject to guardianship, whether a resident of the state or not, if any of the estate is located within the county. Separate guardians of the person and of the estate of a ward may be appointed.

Wis. Stat. § 880.03.

On May 10, 2006, the Wisconsin Legislature repealed Wis. Stat. § 880.03. 2005 Wis. Act. 387, § 307. This Act, among other things, creates chapter 54 to address the appointment of a guardian. 2005 Wis. Act. 387, § 100.

Under the newly created chapter 54, "A court may appoint a guardian of the person or a guardian of the estate, or both, for an individual if the court determines that the individual is a minor." Wis. Stat. § 54.10(1) (2005–06).

[11] *See also* Wis. Stat. §§ 48.831 and 48.977.

minor.[12] Prior to determining who should be appointed as a guardian, a court must first hold a hearing to determine if the child is "the proper subject for guardianship" and in need of a guardian.[13] While all minors are potentially subject to guardianship, the relevant statute directs a court to appoint a guardian when there exist "extraordinary circumstances" requiring medical aid or the prevention of harm to the minor's person or property. Wis. Stat. § 880.03.[14]

¶ 16. The legislature has not defined "extraordinary circumstances" under this section, and this court has not previously discussed what would constitute "extraordinary circumstances" under the guardianship statutes. In construing a statute, this court ascertains and gives effect to the legislative intent. *State v. Petty*, 201 Wis. 2d 337, 355, 548 N.W.2d 817 (1996). "In accord with the canons of statutory construction, [this court] give[s] words their ordinary and accepted meanings so

---

[12] Wis. Stat. § 880.01(3).

[13] Wisconsin Statute § 880.12 reads, in relevant part:

Determination and order appointing guardian. (1) The court shall after hearing determine whether the person is a proper subject for guardianship. If the person is found to be in need of a guardian, the court shall appoint one or more guardians but not more than one guardian of the person shall be appointed unless they be husband and wife.

[14] The statute reads, in relevant part:

*The court may appoint a guardian* of the person of anyone subject to guardianship who is also a resident of the county, or of a nonresident found in the county, *under extraordinary circumstances requiring medical aid or the prevention of harm to his or her person or property* . . . .

Wis. Stat. § 880.03 (emphasis added).

as not to render any part of the statute superfluous." *Id.* at 356–57. This court often relies upon definitions of that word in a "recognized dictionary to determine the common and ordinary meaning of the word." *Mared Industries, Inc. v. Mansfield,* 2005 WI 5, ¶ 32, 277 Wis. 2d 350, 690 N.W.2d 835 (quoting *State v. Polashek,* 2002 WI 74, ¶ 19, 253 Wis. 2d 527, 646 N.W.2d 330). The applicable dictionary definition of "extraordinary" is "beyond what is ordinary or usual." *American Heritage Dictionary* 649 (3d ed. 1992). *Black's Law Dictionary* defines "extraordinary circumstances" as "[f]actors of time, place, etc., which are not usually associated with a particular thing or event; out of the ordinary factors." *Black's Law Dictionary* 586 (6th ed. 1990). We conclude that the statute is clear and unambiguous: the statute authorizes courts to appoint a guardian only in cases where circumstances out of the ordinary require medical aid, or in cases where circumstances out of the ordinary require the appointment of a guardian in order to prevent harm to the person or property.

¶ 17. In proceedings for the appointment of a guardian, the burden of proof by clear and convincing evidence rests upon the party seeking guardianship. *See Colliton v. Colliton,* 41 Wis. 2d 487, 491, 164 N.W.2d 480 (1969) (addressing the appointment of a guardian due to mental incompetency); *Cheryl F. v. Sheboygan County,* 170 Wis. 2d 420, 425, 489 N.W.2d 636 (Ct. App. 1992) (addressing the appointment of a guardian due to mental incompetency). We next examine whether Robin established, by clear and convincing evidence, the existence of extraordinary circumstances requiring medical aid or the prevention of

harm, which would allow the court to appoint Robin as the guardian of James over the objections of James's mother.

¶ 18. We begin our analysis by observing that the record before us is incomplete.[15] Full transcripts of the various hearings referenced in the parties' briefs were not made available. Our review is therefore limited to those parts of the record that are made available to us. *Ryde v. Dane County*, 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977) (holding that the lack of a transcript "merely limits the review to those portions of the record that are available to the reviewing court"). Even when we examine a limited record, however, our standard of

---

[15] We note that the parties failed to explicitly address whether the present case is a proper situation to impose a guardianship and, instead, limited their briefs to an analysis of *who* the court should appoint as guardian. As discussed earlier, Robin asserted on appeal that the parental preference established by Wis. Stat. § 880.09(2) required the circuit court to appoint her as guardian if the court found James's parents "unsuitable and unwilling" to care for James. Lamanda responded that instead of applying the standard of "unsuitable and unwilling" the court must apply a higher standard of "unfitness" under *Barstad*. The parties' arguments are misdirected. Section 880.09(2) addresses whether a parent should be given *preference* when the court is deciding *who* to appoint as a guardian. This section is inapplicable if the court does not first determine that there exist conditions for a guardianship in the first place.

Although this court often requests briefs when an issue is raised sua sponte, this court has "decline[ed] to adopt a per se rule requiring courts to permit the submission of additional briefs whenever an issue is raised sua sponte." *Bartus v. DHSS*, 176 Wis. 2d 1063, 1073, 501 N.W.2d 419 (1993). In the present case, we find that additional briefing is unnecessary because the record and briefs contain adequate information to continue our analysis.

review does not permit us to second-guess the circuit court's factual findings. *See Howard M.*, 196 Wis. 2d at 27.

¶ 19. In the present case, the circuit court found Lamanda's home "somewhat chaotic," and noted the existence of "some general allegations of neglect." However, the court concluded that there were no specific signs of neglect to any of Lamanda's children. The circuit court further found that because the Wisconsin Department of Human Services decided against removing Lamanda's other children, the department had tacitly approved that James's home placement was appropriate, subject to certain programming. Based on this finding, the court ruled that guardianship was inappropriate in this case.

¶ 20. Upon review of the record, we conclude that the circuit court's findings of fact are not clearly erroneous. We further conclude that Robin failed to establish by clear and convincing evidence that extraordinary circumstances exist requiring medical aid or the prevention of harm with respect to James. We agree with the circuit court that on the basis of this record, no need for a guardian has been shown.

¶ 21. In sum, we conclude that in evaluating a petition for a permanent guardianship on behalf of a minor filed by a nonparent when a parent objects, a court must first determine whether the party bringing the guardianship petition has shown that the child is in need of a guardian because there exist extraordinary circumstances requiring medical aid or the prevention of harm. Absent a showing of such extraordinary circumstances or need for a guardian, the court cannot appoint a guardian.

IV

¶ 22. We conclude that under chapter 880, a court is authorized to appoint a guardian for a minor when a parent objects when there exist extraordinary circumstances affecting the health or safety of the minor. We further conclude that the record in the present case does not support a finding of the requisite extraordinary circumstances or any need to appoint a guardian. Accordingly, we affirm the decision of the court of appeals on other grounds.

¶ 23. *By the Court.*—The decision of the court of appeals is affirmed.

¶ 24. DAVID T. PROSSER, J. (*concurring*). While I concur in the result, I cannot join the majority opinion because I believe the standard it sets for granting a guardianship is not responsive to the complex realities that demand the appointment of a guardian. By adopting a one-size-fits-all standard that exceeds what is constitutionally required, the majority hamstrings the usefulness and flexibility of guardianships.

¶ 25. On November 5, 2003, Robin K. filed a petition for permanent guardianship of a minor, James D.K. Robin K. was the child's great aunt. She alleged that three-year-old James had spent most of the past two-and-one-half years living with her.

¶ 26. The following day, November 6, the child's mother, Lamanda M., asked a police officer to remove James from Robin K.'s home and return him to her.

¶ 27. On November 13, Robin K. filed an amended petition, seeking *temporary* guardianship of James. The amended petition was supported by a sworn affidavit alleging that for the past two-and-one-half years Robin

349

K. had borne the primary responsibility for the care of James; during that time the child had been primarily placed with her by the mother, and Robin K. had provided for the child's care and welfare; Robin K. had taken the child to California during business trips "on numerous occasions;" the mother had "refused to financially support" the child "at any point in the child's life;" the child referred to his great aunt Robin K. as "Mommy;" and until the time the guardianship petition was filed, Lamanda M. had no objection to the placement of James with Robin K.

¶ 28. Robin K.'s affidavit also stated that she feared for the emotional and physical welfare of James when he was at his mother's house. On one occasion when he was with Lamanda M., the child was in an automobile accident that involved drinking; on another occasion, the child was in the car when the driver was arrested for operating under the influence of an intoxicant. Robin K. claimed that multiple people lived at the mother's residence and that James did not have his own bedroom.

¶ 29. In response to Robin K.'s petition, the court scheduled a hearing for November 20, 2003. Lamanda M. objected. In a November 18 letter to the court, she wrote:

> I need to postphon my coort date on Nov. 20th 2003 for 2 resons. 1 I jest found out yesterday and I haven't found a lawer for my case. 2. I have to go out of state for a funrul. I have to leave tonight and I proble won't be back in til Saterday. I hope you will understand. I reall haven't found time to get council. Thanks for your time.

¶ 30. The court rescheduled the hearing, and it took evidence on December 3, 2003. Lamanda M. appeared at the December hearing without an attorney.

## THE CIRCUIT COURT HEARING

¶ 31. This court is at a disadvantage because it does not have a transcript of the evidentiary portion of the circuit court hearing. We know, however, that the case came before the court as a petition for a *temporary* guardianship of the person of a minor under Wis. Stat. § 880.15 and that the court assumed the truth of Robin K.'s allegations about the child's placement, commenting that "the child's obviously spent a great deal of time with [Robin K.] over the two and a half years," a "placement" that ended "when the guardianship [proceeding] was commenced."

¶ 32. There is a transcript of the court's ruling and the arguments that preceded the ruling. In the arguments, the guardian ad litem recommended the requested guardianship based upon (a) "concerns that I see with regard to the parenting that is being provided," (b) the abandonment standard having somewhat been met "by the mere fact that the child has not been in the care of the mother for most of the time," (c) the apparent lack of stability in the mother's life, (d) some of the decisions the mother "makes are not necessarily in the best interests" of her children, (e) the absence of stability in maintaining work or having a regular income, (f) concern about the stability of the mother's relationships with men ("four children, three born/one unborn ... and all of them have different fathers"), (g) concerns leading to the intervention of the Sauk County Department of Human Services, and (h) "the wellbeing and best interests of the child."

¶ 33. Counsel for Robin K. made legal arguments about guardianship and how the mother could terminate the guardianship if the mother could show that she had become a "suitable" parent. "This guardianship is

not something that goes on indefinitely," counsel argued. "I have been involved in guardianships that have terminated and I think that all [that] has to be shown is that it's in the child's best interests to be with the mother."

¶ 34. "[T]he most telling evidence against the mother in this case," counsel added, "is the fact that she has allowed [Robin K.] to have this child[,] and the Court then has to ask itself why. And I think the answer is clear. Because she didn't feel she could care for the child."

¶ 35. Lamanda M. fired back:

> I never thought that I couldn't take care of my son. . . . I still don't understand why they think I'm not capable of taking care of my son, or stable enough to take care of my son, when I've had my girls and I'm stable enough to take care of them. And I know that I'm young and I know that I have some money problems and some problems with having my friends come over. But . . . I think everybody once in their life goes through money situations when they lose their job or they can't find new employment.

¶ 36. In its ruling, the court stated that it had difficulty with the guardianship statute "in a situation such as this." The court indicated there were no limitations on commencing the action and no apparent way to end the guardianship. "[W]hat is the standard to be applied?" the court asked. The court then answered its own question: "[T]he guardianship does not have a standard." Although the court expressed concern "with the situation as it[']s been described to exist in [the mother's] home," the number of people there, the number of children, the "somewhat chaotic" atmosphere, and the general allegations of neglect, it concluded: "I

352

don't believe that the guardianship is appropriate in this case." The court then dismissed the petition.

¶ 37. The issue presented on review is what standard the circuit court should employ in determining whether to grant a temporary guardianship of the person of a minor child when the guardianship is opposed by the child's mother.

## DISCUSSION

¶ 38. Chapter 880 is entitled "Guardians and Wards." Wisconsin Stat. § 880.03 provides in part that "[a]ll minors, incompetents, and spendthrifts are subject to guardianship." There may be a guardian of the "person" or a guardian of the "estate," or both. § 880.03. In each case, the circuit court makes the appointment.

¶ 39. A "guardian" is defined, in part, in Wis. Stat. § 880.01(3) as "one appointed by a court to have care, custody and control of the person of a minor . . . *or* the management of the estate of a minor . . . ." (Emphasis added.)

¶ 40. In this case, Robin K. is seeking a new legal status—guardian of the person of a minor child. That status would give her "custody" of the child. She is attempting to secure this legal status over the opposition of the mother. In these specific circumstances, the standard appears to be governed by *Barstad v. Frazier,* 118 Wis. 2d 549, 568–69, 348 N.W.2d 479 (1984):

> We conclude that the rule to be followed in custody disputes between parents and third parties is that a parent is entitled to custody of his or her children unless the parent is either *unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party.* Compelling reasons include abandonment, persistent neglect of parental responsi-

bilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child. If the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby.

¶ 41. The court expanded its analysis in a footnote:

We are *not ... holding that parents may be deprived of custody* of their children *only if they are found to be unfit.* ... A complete failure to assume any significant responsibility for the child ... may well constitute compelling reasons warranting an award of custody to a non-parent.

*Id.* at 569 n.9 (emphasis added).

¶ 42. This court adhered to the *Barstad* standard as the proper standard when determining whether custody should be granted to a party who is not a minor's biological or adoptive parent. *Holtzman v. Knott,* 192 Wis. 2d 649, 664–65, 533 N.W.2d 419 (1995). *See also Sporleder v. Hermes,* 162 Wis. 2d 1002, 1009, 471 N.W.2d 202 (1991).

¶ 43. The standard set out in *Barstad* is a statement of "constitutional principles." *Id.* at 563. This means that when it applies, this standard prevails over any different statutory language. Nonetheless, the *Barstad* court tied the standard to the existing custody statute, Wis. Stat. § 767.24(1)(c) (1979–80):

If the interest of any child demands it, and if the court finds that neither party [parent] is able to care for the child adequately or that neither party [parent] is fit and proper to have the care and custody of the child, the court may declare any such child to be in need of protection or services and transfer legal custody of the child to a relative of the child . . . .

¶ 44. The substance of this quoted provision is now found in Wis. Stat. § 767.24(3)(a). Significantly, this same paragraph (a) also states: "If the court transfers legal custody of a child under this subsection [3], in its order the court shall notify the parents of any applicable grounds for termination of parental rights under s. 48.415."

¶ 45. If one were able to draw a clear distinction between the legal custody under present § 767.24(3) and the guardianship custody implicated in § 880.03, then the *Barstad* standard might be relaxed. But the evidence here suggests that Robin K.'s ultimate goal was to obtain, through a permanent guardianship, the kind of legal custody, care, and control of the child contemplated in § 767.24(3). Absent a clear distinction between custody and guardianship, the court of appeals correctly applied the *Barstad* standard to this case. The court of appeals has also applied the *Barstad* standard in other guardianship cases, stating that the party petitioning for guardianship must first meet the *Barstad* standard—not the extraordinary circumstances standard—before a non-parent can be appointed guardian. *See e.g., Elgin W. v. DHFS*, 221 Wis. 2d 36, 42, 584 N.W.2d 195 (Ct. App. 1998); *Howard M. v. Jean R.*, 196 Wis. 2d 16, 24, 539 N.W.2d 104 (Ct. App. 1995).

¶ 46. At the December 3, 2003, hearing, Robin K. sought a *temporary* guardianship. A temporary guardianship is described in Wis. Stat. § 880.15:

> If, after consideration of a petition for temporary guardianship, the court finds that the welfare of a minor, spendthrift or an alleged incompetent requires the immediate appointment of a guardian of the person . . . it may appoint a temporary guardian for a period not to exceed 60 days unless further extended for

60 days by order of the court. The court may extend the period only once. The authority of the temporary guardian shall be limited to the performance of duties respecting . . . the performance of particular acts, as stated in the order of appointment. All provisions of the statutes concerning the powers and duties of guardians shall apply to temporary guardians except as limited by the order of appointment.

¶ 47. Because the appointment of a temporary guardian is limited in time, the court may focus on the short-term welfare of the child in light of a parent's alleged inability to provide care or the presence of some immediate risk to the child as reflected in a need for protection or services. The statute appears to give the court power to set conditions in its order of appointment.

¶ 48. A temporary guardianship permits a troubled parent to stabilize her situation, addressing problems that might jeopardize her parental rights. A temporary guardianship permits the guardian or other person seeking a change of legal custody to determine whether to go forward, assuming the burden of proving parental "unfitness" or other grounds that will overcome parental opposition.

¶ 49. I part company with the majority opinion for three reasons.

¶ 50. First, the majority treats this case as a request for a permanent guardianship but declines to apply the *Barstad* standard. Majority op., ¶ 3 n.3. I disagree. The majority's standard, "extraordinary circumstances affecting the health or safety of the minor," is entirely consistent with the phrase in the *Barstad* standard: "extraordinary circumstances that would drastically affect the welfare of the child." *Barstad*, 118 Wis. 2d at 568.

356

¶ 51. Unless this court withdraws that language or successfully distinguishes the facts here from the facts in *Barstad,* the *Barstad* standard—which is *not* limited to "unfitness"—applies to a permanent, non-parental guardianship opposed by a mother.

¶ 52. Second, by turning to the language in § 880.03 for its "standard," the court is creating a quandary for future cases.[1] The "extraordinary circumstances" language applies to *all* permanent guardianships. It applies to guardianships of the person for minors (regardless of whether a parent objects), spendthrifts, and incompetents, and it also applies to guardianships of their respective "estates."[2]

---

[1] As the majority indicates, 2005 Wisconsin Act 387 repeals and amends Chapter 880 of the Wisconsin Statutes. Majority op., ¶ 14 n.10. One such amendment is the repeal of the extraordinary circumstances standard. Since this standard will no longer apply, I urge the legislature to examine the standards it wishes to apply to guardianship cases when a parent is involved, as well as in other circumstances. The legislature is not free to disregard a constitutional standard for guardianship of a minor's person in cases involving the opposition of a parent. Additionally, I would encourage the legislature to examine the constitutionality of the "best interest of the minor" standard created by Act 387 in Wis. Stat. §§ 54.15(5) and 54.56(2) in light of *Troxel v. Granville,* 530 U.S. 57, 72–73 (2000).

[2] When determining guardianship, the circuit court must select one of five categories of residency under which the minor is classified. Despite this court's statutory interpretation of Wis. Stat. § 880.03, the Determination and Order for Guardianship of Minor form, created by the Judicial Conference Forms Committee, requires a showing of extraordinary circumstances only for a minor who is a nonresident of the county in which the petition for guardianship is filed. The form does not reference the standard for minors who are residents of the state and county, residents of the state and physically present in the

¶ 53. Frankly, the standard applied in these cases cannot be the same in all situations.[3] The standard has to vary when a parent is *not* involved, when a guardianship is *not* contested, and perhaps when there is a contested guardianship of the "estate" as opposed to a contested guardianship of the "person." To illustrate, if Robin K. had retained actual custody of James and if the mother did not oppose Robin K.'s guardianship of the child's person, the standard would have to be different from "extraordinary circumstances affecting the health or safety of the minor," because there would be, on such facts, no threat to the health or safety of James. It is not clear, under the majority's analysis, whether it would insist on applying the same standard on such facts, relying on § 880.03.

¶ 54. Third, I recognize that this court does not have the full record and that the circuit court did not find facts to grant the petition for a temporary guardianship. But I completely disagree that the court *could not* have granted a temporary guardianship if the facts alleged were established at the hearing. I believe it could have.

¶ 55. The *Barstad* court took pains to explain that the fundamental liberty interest of natural parents in the care, custody, and management of their own children

county, nonresidents of the state whose person or property may be found in the county, or residents or nonresidents of the state with property located within the county. The forms committee would need to amend this form, in light of the majority opinion, so that it is consistent with the statutory interpretation that the extraordinary circumstances standard applies to all guardianships, except that 2005 Wis. Act 387 appears to leave the majority opinion without any prospective effect.

[3] Although the majority claims to limit its holding to the appointment of a guardian when a parent objects, there is no statutory basis for this limitation.

does not evaporate simply because they have not been model parents. *Barstad,* 118 Wis. 2d at 562. On the other hand, the assertion of parental rights is to some extent dependent upon the assumption of parental responsibilities. "A biological parent who has never borne any significant responsibility for the child and who has not functioned as a member of the child's family unit is not entitled to the full constitutional protections." *Id.* at 563.

¶ 56. Lamanda M. asserted her parental rights but substantially abdicated her parental responsibilities. A young mother who willingly places her child in the care, de facto custody, and control of a relative for the better part of two-and-one-half years is either not responsible or, conversely, sufficiently responsible to realize that she cannot properly care for her child. It is not likely that her situation changed abruptly overnight.

¶ 57. In addition, at the time of the hearing, Lamanda M. was a mother who *allegedly* had four non-marital children by four different fathers, who had never provided financial support for James, who was unemployed, who had no stable source of income, who had a chaotic household, who had drug and alcohol problems, who had lost her driving privileges, who was (on the basis of her letter to the court) poorly educated, and who had a lengthy history of law enforcement contact and prosecution.

¶ 58. This court should not deprive circuit courts of the legal authority to grant guardianships, especially temporary guardianships, when facts of this gravity are established.

¶ 59. I concur in the result here, first, because I am not prepared to say that the findings of the circuit court are clearly erroneous, and, second, because two-

and-one-half years have passed since December 3, 2003, and we do not know how the situation has changed. However, I urge authorities in Sauk County to assure themselves that James is not a child in need of protection or services. Unlike many contemporary children, James has a good alternative, if an alternative is necessary.