PER CURIAM.
¶1 J.S.N. appeals orders that protectively placed his father, J.J.N.; appointed guardians of J.J.N.'s person and estate; and revoked J.J.N.'s power of attorney documents. Having identified J.S.N.'s arguments as best we are able, we reject those arguments and affirm the orders for the reasons explained below.[1]
BACKGROUND
¶2 On April 12, 2017, Cheryl Braun, a social worker with the Pierce County Department of Human Services, petitioned for both temporary and permanent guardianship of J.J.N.'s person and estate due to incompetency. Braun also petitioned for protective placement of J.J.N., and she filed a statement for emergency protective placement.
¶3 At the time the petitions were filed, then ninety-seven-year-old J.J.N. was living in a two-bedroom apartment with his son, J.S.N., who was named as the agent under both a durable power of attorney and a healthcare power of attorney that J.J.N. had executed in October 2008. The petitions alleged that J.S.N. was not a fit and proper person to be power of attorney or guardian for his father. In an "Emergency Protective Placement Court Report," Braun relayed that, on April 11, 2017, she and another social worker, along with Ellsworth police officer Darrin Foss, responded to a call reporting that J.J.N. had an injury above his left eye; that J.S.N. had physically and verbally abused J.J.N.; and that J.J.N. seemed "fearful."
¶4 The circuit court appointed both adversary counsel and a guardian ad litem for J.J.N. An uncontested hearing on the petitions for temporary guardianship and emergency protective placement was held before a circuit court commissioner on April 14, 2017. The court commissioner ordered temporary protective placement for J.J.N. at a nursing facility, and appointed a temporary corporate guardian for J.J.N.'s person and estate. After a contested final hearing, the circuit court found J.J.N. to be incompetent and in need of a guardian and protective placement. The circuit court also revoked the powers of attorney. This appeal follows.
DISCUSSION
¶5 As an initial matter, the County argues that J.S.N. lacks standing to appeal. In order to reach the merits of J.S.N.'s discernable arguments, we assume without deciding that J.S.N. has standing to appeal on his own behalf the orders for protective placement, guardianship and termination of the powers of attorney. See Voters with Facts v. City of Eau Claire , 2018 WI 63, ¶26, 382 Wis. 2d 1, 913 N.W.2d 131 (court may assume standing to reach merits).
¶6 The County alternatively contends that J.S.N. failed to properly perfect his appeal from the WIS. STAT. ch. 55 order for protective placement. We are not persuaded. WISCONSIN STAT. § 55.20 provides:
An appeal may be taken to the court of appeals from a final judgment or final order under this chapter within the time period specified in s. 808.04(3) and in accordance with s. 809.30 by the subject of the petition or the individual's guardian, by any petitioner, or by the representative of the public.
(Emphasis added.) J.S.N. is not one of the delineated parties who "may" appeal in accordance with WIS. STAT. RULE 809.30. However, J.S.N. may pursue an appeal on his own behalf. The County next asserts that J.S.N. was required to perfect his appeal by timely filing a notice of intent to seek postdisposition relief pursuant to RULE 809.30(2)(b). That rule provides, in relevant part, that within twenty days after the final adjudication, "the person" shall file a notice of intent to pursue postdisposition relief in the circuit court. "Person," however, is defined as "[a] subject individual or ward seeking postdisposition relief in ... a case under ch. 51, 55 or 980." Because J.S.N. is not the "subject individual or ward," he was not required to file a notice of intent under RULE 809.30(2)(b) in order to perfect the appeal as to the protective placement.
¶7 Turning to the merits of J.S.N.'s appeal, J.S.N. appears to argue that neither he nor his father received proper notice of the hearing on the petitions for temporary guardianship and emergency protective placement. J.S.N., however, does not represent his father in this appeal. J.S.N. is not his father's guardian and no notice of appeal has been filed for J.J.N.[2] Therefore, we reject this and any other arguments that J.S.N. purports to raise on J.J.N.'s behalf.
¶8 As for J.S.N.'s argument that he, personally, did not receive proper notice of the temporary guardianship hearing, WIS. STAT. § 54.38(6) provides, in relevant part, that "[t]he petitioner shall serve notice of the order for hearing on the proposed ward before the hearing or not later than 3 calendar days after the hearing." Because J.S.N. is not the proposed ward, he was not entitled to notice of the temporary guardianship hearing.
¶9 Similarly, with respect to emergency protective placement, WIS. STAT. § 55.135(4) requires "[t]he sheriff or other person making emergency protective placement ... [to] provide the individual with written notice and orally inform him or her of the time and place of the preliminary hearing." The individual referenced here is the person being placed in emergency protective placement. See § 55.135. J.S.N. is not the "individual" subject to emergency protective placement. Therefore, "the sheriff or other person" was not required to provide the statutorily required notice of the preliminary hearing to J.S.N.
¶10 J.S.N. also argues that the circuit court lost competency to hear the petitions because the final adjudications did not take place within prescribed time limits. A circuit court loses competency to act if the court does not act within statutorily mandated time limits. Sheboygan Cty. Dep't of Soc. Servcs. v. Matthew S. , 2005 WI 84, ¶37, 282 Wis. 2d 150, 698 N.W.2d 631. WISCONSIN STAT. § 54.44 provides, in relevant part, that "[a] petition for guardianship ... shall be heard within 90 days after it is filed." Here, the petition was filed April 12, 2017, making the ninety-day deadline July 11, 2017. The hearing was timely held on June 13, 2017.
¶11 With respect to protective placement, WIS. STAT. § 55.10(1) requires the circuit court to hear a petition for protective placement within sixty days of the date it is filed unless an extension of time is requested "by the petitioner, the individual sought to be protected or the individual's guardian ad litem, or the county department, in which case the court may extend the date for hearing by up to 45 days." At the preliminary hearing, adversary counsel for J.J.N. waived time limits on J.J.N.'s behalf. Assuming up to a forty-five-day extension, the June 13 hearing was held well before what would have been a July 26, 2017 deadline.
¶12 Citing WIS. STAT. § 55.135(5) and N.N. v. County of Dane , 140 Wis. 2d 64, 409 N.W.2d 388 (Ct. App. 1987), J.S.N. alternatively contends that the circuit court lacked competency to hear the petition for protective placement because the final hearing was not held within thirty days of J.J.N.'s emergency protective placement. Section 55.135(5) provides, in relevant part: "Upon finding probable cause under sub. (4), the court may order temporary protective placement up to 30 days pending the hearing for a permanent protective placement[.]" In N.N. , this court held that the statute requires the final hearing to be held within thirty days of the probable cause hearing and the circuit court, whether in the exercise of its own discretion or on stipulation of the parties, lacks authority to enlarge that time limit or extend the temporary placement beyond it.[3] N.N. , 140 Wis. 2d at 69. A challenge to the circuit court's competency to proceed, however, is forfeited[4] if not raised in the circuit court. Village of Trempealeau v. Mikrut , 2004 WI 79, ¶38, 273 Wis. 2d 76, 681 N.W.2d 190. Here, J.S.N. has failed to establish that either he or adversary counsel on J.J.N.'s behalf raised this challenge to the circuit court's competency. We therefore deem the argument forfeited.
¶13 Next, J.S.N. asserts he was not afforded due process at the final hearing. At the outset of the final hearing, counsel for J.S.N. sought to participate in the proceedings. An interested person, such as J.S.N., "may participate in the hearing on the petition at the court's discretion." See WIS. STAT. § 54.44(5m). The circuit court, in the reasonable exercise of its discretion, limited counsel's participation, concluding that J.S.N.'s position was aligned with and represented by adversary counsel for J.J.N., who took the position that good cause was necessary to revoke the powers of attorney that were executed when J.J.N. was competent.[5] We therefore reject J.S.N.'s due process claim.
¶14 J.S.N. also argues the circuit court erroneously exercised its discretion in determining J.J.N. was a proper subject for guardianship and protective placement, and in ordering the powers of attorney revoked as part of the guardianship order. Decisions on whether to appoint a guardian and order protective placement are determinations within the circuit court's discretion. Robin K. v. Lamanda M. , 2006 WI 68, ¶12, 291 Wis. 2d 333, 718 N.W.2d 38 ; Agnes T. v. Milwaukee Cty. , 179 Wis. 2d 363, 372, 507 N.W.2d 373 (Ct. App. 1993). We affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result. Robin K. , 291 Wis. 2d 333, ¶12. The proper exercise of discretion contemplates that the circuit court explains its reasoning, but, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision. Randall v. Randall , 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.
¶15 In both guardianship and protective placement cases, we give deference to the circuit court's factual findings unless those findings are clearly erroneous. See WIS. STAT. § 805.17(2) ; Robin K. , 291 Wis. 2d 333, ¶12 ; Walworth Cty. v. Therese B. , 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. Whether the evidence satisfies the legal standard for granting a guardianship or a protective placement is a question of law that this court reviews de novo. Cheryl F. v. Sheboygan Cty. , 170 Wis. 2d 420, 425, 489 N.W.2d 636 (Ct. App. 1992).
¶16 Under WIS. STAT. § 54.10(3)(a), a court may appoint a guardian of the person or estate for an individual based on a finding that the individual is incompetent, if the court finds by clear and convincing evidence that: (1) the individual is at least seventeen years and nine months old; (2) for purposes of appointment of a guardian of the person, the individual, because of an impairment, is unable effectively to receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety; (3) for purposes of appointment of a guardian of the estate, the individual, because of an impairment, is unable effectively to receive and evaluate information or to make or communicate decisions related to management of his or her property or financial affairs, and the individual has property that will be dissipated in whole or in part, the individual is unable to provide for his or her support, or the individual is unable to prevent financial exploitation; and (4) the individual's need for assistance in decision making or communication is unable to be met effectively and less restrictively through appropriate and reasonably available training, education, support services, health care, assistive devices, a supported decision-making agreement under WIS. STAT. ch. 52, or other means that the individual will accept.
¶17 A circuit court may order protective placement of an adult individual pursuant to WIS. STAT. § 55.08(1), if it finds: (1) the individual has been determined to be incompetent; (2) the individual has a primary need for residential care and custody; (3) as a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others; and (4) the individual has a disability that is permanent or likely to be permanent. See K.N.K. v. Buhler , 139 Wis. 2d 190, 197, 407 N.W.2d 281 (Ct. App. 1987).
¶18 Before the final hearing in the instant case, an examining physician submitted a report opining that J.J.N. suffers from dementia, profound hearing loss, and limited mobility. The physician further opined, to a reasonable degree of professional certainty, that J.J.N. is incompetent and in need of a guardian. The physician did not specify whether J.J.N. was in need of a guardian of his person, estate or both. However, the questions answered on the examination form considered guardianship of both J.J.N.'s person and estate. Braun testified regarding J.J.N.'s daily living needs, noting "[he] needs assistance with toileting ...; he needs assistance with medication monitoring, setup, administration; he's not oriented to place and time; he needs assistance-with meals, dressing, hygiene, everything." Because J.J.N. has a "fall history" and limited mobility, Braun opined that the conditions of the apartment were not appropriate to J.J.N.'s needs, as the floors were not clear and were "hard to navigate through."
¶19 Braun further testified that when she responded to the April 11 abuse report, there were no sheets on J.J.N.'s bed and no clean clothes in the dresser drawers. Braun added that she observed the bruise and cut above J.J.N.'s left eye, and when she asked him what happened, he "made statements like, I said the right thing at the wrong time; I can't keep my mouth shut; he hit me; I'm like a punching bag; I don't ever feel safe; he said something about women don't hit; he identified a 'he' as the potential abuser." According to Braun, J.S.N. was the only male providing care for J.J.N.
¶20 Braun also testified about the history of adult protection reports related to J.J.N., including a December 14, 2016 call by J.S.N. reporting that his father "woke up weird." When responding to the apartment at that time, the "reporter," having had previous contact with J.J.N., found his "functioning" was "significantly decreased, he was covered in bruises and was quite dehydrated." Additionally, J.J.N. "had a contusion on his right knee and left shoulder, old bruise on the front of his neck, multiple skin tears which looked as if they should have been assessed medically, ... [r]ash on his groin area and a significant amount of dried feces in his buttocks." The reporter stated that J.J.N.'s clothing was "very dirty with food, blood, urine and feces stains," and both J.J.N. and J.S.N. "had very poor hygiene and the house was very pungent."
¶21 J.S.N. testified that he never hit his father and any injuries or bruises were the result of his father falling or him grabbing his father to prevent him from falling. J.S.N. further explained that he has yelled at J.J.N. because his father is hard of hearing. Additionally, he does not keep clean clothes in J.J.N.'s drawers because J.J.N. has a tendency to "toss stuff all over." J.S.N. confirmed that personal care agreements executed in November 2010 and November 2015 provided that J.J.N. would pay J.S.N. $ 5000 per month, an amount J.S.N. stated was suggested by an eldercare attorney. J.S.N. testified that although he had never collected any of the monthly payments owed under the personal care agreements, he intended to collect the $ 390,000 arrearage he believed was owed to him pursuant to the agreements.
¶22 Based on the evidence and hearing testimony, the circuit court found, by clear and convincing evidence, that J.J.N. is incompetent as a result of a degenerative brain disorder and is a proper subject for guardianship and protective placement. The court made no finding that J.S.N. had harmed his father but, rather, found that J.S.N. was simply unable to provide the physical and financial care his father needed. The court also revoked the powers of attorney, properly concluding J.S.N. had a conflict of interest due to his claims under the personal care agreements-specifically, the inconsistency with the fiduciary duties versus the purported debt owed.
¶23 On appeal, it appears J.S.N. requests this court to view the evidence differently than the circuit court viewed it. That is not appropriate under our standard of review. J.S.N. has not shown that any of the court's factual findings were clearly erroneous. As we have discussed, the circuit court properly exercised its discretion in making the decisions on appeal. To the extent J.S.N. asserts that the circuit court was required to first resolve whether the powers of attorney would be revoked, his argument is conclusory and fails to persuade us that the court was required to revoke the powers of attorney before ordering guardianship and protective placement for J.J.N.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Counsel's rambling presentation of the issues is difficult to follow, and many of the arguments are conclusory and undeveloped. We cannot address issues that are framed in such a way that we cannot perceive a cognizable basis for relief. See State v. Flynn , 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) ("We will not decide issues that are not, or inadequately, briefed."). Accordingly, we address J.S.N.'s arguments as best we can discern them. To the extent that J.S.N. intended to make other arguments that we do not directly address, we reject them on the grounds that they are inadequately briefed and lack discernable potential merit.
Moreover, we admonish J.S.N.'s counsel for his violation of our appellate rules governing the content of appellate briefs. Specifically, although J.S.N.'s brief included some record citations, counsel failed to include citations to the record for several asserted facts. See Wis. Stat. Rule 809.19(1)(d) (2017-18). Additionally, the table of authorities fails to reference the pages of the brief on which the authorities may be found. See Rule 809.19(1)(a) (2017-18). Further, the brief purports to "incorporate by reference" affidavits and other documents related to J.S.N.'s arguments in the circuit court. This type of incorporation is not permissible appellate advocacy, as it creates the potential for exceeding the allowable length of briefs.
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

An "appellant" is a person who files a notice of appeal. See Wis. Stat. Rule 809.01(2).

The court in N.N. v. County of Dane , 140 Wis. 2d 64, 409 N.W.2d 388 (Ct. App. 1987) references Wis. Stat. § 55.06(11)(c) (1985-86), which was later renumbered as Wis. Stat. § 55.135(5).

Our supreme court has recognized that it is frequently more accurate to say a party forfeited, rather than waived, a right. See State v. Ndina , 2009 WI 21, ¶¶28-29, 315 Wis. 2d 653, 761 N.W.2d 612 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."). Therefore, where appropriate, we use the term "forfeited" rather than "waived."

Adversary counsel ultimately recommended that if the circuit court revoked the powers of attorney, it name a corporate guardian over J.J.N.'s estate but allow J.S.N. to serve as guardian of J.J.N.'s person.