COURT OF APPEALS
DECISION
DATED AND FILED

March 3, 2021

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. 2019AP1911
2019AP1912
2019AP1913
2019AP1914
2019AP1915

Cir. Ct. Nos. 2019GN23
2019GN25
2019GN26
2019GN24
2019GN27

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

NO. 2019AP1911

IN THE MATTER OF THE GUARDIANSHIP OF T.A.F.:

E.A.F. AND C.R.F.,

PETITIONERS-RESPONDENTS,

V.

S.B.,

RESPONDENT-APPELLANT.

**NO. 2019AP1912**

**IN THE MATTER OF THE GUARDIANSHIP OF J.J.:**

**E.A.F. AND C.R.F.,**

 **PETITIONERS-RESPONDENTS,**

 **V.**

**S.B.,**

 **RESPONDENT-APPELLANT.**

**NO. 2019AP1913**

**IN THE MATTER OF THE GUARDIANSHIP OF C.E.F.:**

**B.A.C.,**

 **PETITIONER-RESPONDENT,**

 **V.**

**S.B.,**

 **RESPONDENT-APPELLANT.**

**No. 2019AP1914**

**IN THE MATTER OF THE GUARDIANSHIP OF Z.B.:**

**B.A.C.,**

    **PETITIONER-RESPONDENT,**

  **V.**

**S.B.,**

    **RESPONDENT-APPELLANT.**

**No. 2019AP1915**

**IN THE MATTER OF THE GUARDIANSHIP OF S.I.B., JR.:**

**B.A.C.,**

    **PETITIONER-RESPONDENT,**

  **V.**

**S.B.,**

    **RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J. and Davis, J.

3

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   In these consolidated appeals, the Mother[1] appeals from circuit court orders granting petitions for guardianship of the children to a third party under WIS. STAT. ch. 54 (2017-18).[2]  The Mother argues that the circuit court incorrectly applied the ***Barstad***[3] standard by shifting the burden of proof to her to establish her parental fitness and that the evidence presented at trial did not satisfy the clear and convincing evidence standard.  We disagree and affirm.

*Background*

¶2    The relationship between the Petitioners[4] and the children in these cases first began in April 2017.  The Mother contacted Safe Families for Children Wisconsin[5] (Safe Families) for assistance with getting on her feet, finding a job,

---

[1]  S.B. is the mother of the five children at issue in these cases.  For ease of reading, we will refer to S.B. as "the Mother."  The children are T.A.F, J.J., C.E.F., Z.B., and S.I.B., Jr., and we will refer to them collectively as "the children."

[2]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3]  ***Barstad v. Frazier***, 118 Wis. 2d 549, 348 N.W.2d 479 (1984).

[4]  The Petitioners-Respondents, E.A.F., C.R.F., and B.A.C., filed the petitions for guardianship in these cases.  For ease of reading, we will refer to them as "the Petitioners."

[5]  Safe Families for Children Wisconsin is a nonprofit organization with a stated mission "to protect children from potential neglect or abuse arising from a crisis, by providing them with a safe, stable, temporary home and reuniting the family as quickly as possible when the crisis is resolved."  SAFE FAMILIES FOR CHILDREN WISCONSIN, *About Us*, https://www.safefamilieswi.org/about-us/ (last visited Feb. 2, 2021).

and moving out of her mother's home. The Petitioners were volunteer hosts for Safe Families during this time and took in the Mother's children on what was meant to be a short-term basis.[6] The record suggests that between April 2017 and April 2019, when the Mother terminated her relationship with Safe Families, the children lived predominantly with the Petitioners, with short periods of time when one or more of the children were living with or visiting the Mother.

¶3    On April 29, 2019, the Petitioners filed for permanent guardianship of the children. These petitions were amended on May 3, 2019, as petitions for both permanent and temporary guardianship, alleging that temporary guardianships were "necessary to protect the child[ren]" and requesting an expedited hearing "to address the legal and safety concerns for the minor child[ren]." The circuit court held a hearing on May 7, 2019, and entered orders of temporary guardianship in all the cases, which also required that the Mother return the children to the Petitioners "immediately."[7]

_____

[6] According to the record, J.J., Z.B., and C.E.F. went into care with Safe Families at the time the Mother first contacted the organization. T.A.F. was not born yet, but she was placed with the Petitioners when she was five weeks old. During the period the Mother was utilizing Safe Families, Z.B. and C.E.F. were hosted primarily by B.A.C., and T.A.F. and J.J. were hosted by E.A.F. and C.R.F. S.I.B., Jr. spent the most time with the Mother but did spend time in foster care and in the care of Petitioners as well.

[7] At the time the petitions and amended petitions for guardianship were filed, all of the children were in the care of the Petitioners. On May 4, 2019, the Mother took her children from the Petitioners with the assistance of law enforcement. After the court ordered the children returned to the Petitioners on May 7, it was discovered that the children were not actually in the Mother's care and the Petitioners picked up the children from various friends and family of the Mother in different locations, including Kenosha, Racine, and Chicago, Illinois.

5

¶4      The hearing on the petitions for permanent guardianship occurred over the course of two days, with testimony from twelve witnesses, including the Mother and the Petitioners.  After presentation of the evidence, all of the guardians ad litem for the children recommended that the court grant the petitions.  The circuit court issued its oral ruling on the record and entered the orders granting all five petitions for permanent guardianship.  The Mother now appeals.

*Discussion*

¶5      These cases involve WIS. STAT. ch. 54 guardianships, which are governed by the third-party guardianship standards established in ***Barstad v. Frazier***, 118 Wis. 2d 549, 348 N.W.2d 479 (1984).  *See* ***Cynthia H. v. Joshua O.***, 2009 WI App 176, ¶¶37-39, 50, 322 Wis. 2d 615, 777 N.W.2d 664.  The Petitioners bear the burden of proof by clear and convincing evidence.[8]  *See* ***Robin K. v. Lamanda M.***, 2006 WI 68, ¶17, 291 Wis. 2d 333, 718 N.W.2d 38.  Whether to grant a petition for guardianship is within the discretion of the circuit court.  ***Id.***, ¶12.  "Custody determinations are based on first-hand observation and experience with the persons involved and therefore the discretionary decisions of the [circuit] court are given great weight on appeal."  ***Barstad***, 118 Wis. 2d at 554.  We will reverse only if the circuit court's findings are clearly erroneous or if the court

---

[8] The Wisconsin Legislature has amended the procedure for guardianships of a minor pursuant to 2019 Wis. Act 109, which became effective August 1, 2020.  The Act "removes guardianships of a minor's person from [WIS. STAT.] ch. 54, and creates a new statute governing guardianships of a child's person in a new subchapter under [WIS. STAT.] ch. 48," which is the Children's Code.  2019 Wis. Act 109; *see also* WIS. STAT. § 48.9795.  As under the previous procedure, § 48.9795(4)(f) also articulates that the burden rests with the petitioner and the standard is clear and convincing evidence.

made an error of law. *Id.*; *Robin K.*, 291 Wis. 2d 333, ¶12. "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶6　　In *Barstad*, our supreme court stated the rule to be followed in custody disputes between parents and third parties: "[A] parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party." *Barstad*, 118 Wis. 2d at 568. The court went on to define "compelling reasons" to "include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child." *Id.* "If the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby." *Id.* at 568-69.

¶7　　On appeal, the Mother argues that although the circuit court correctly articulated the *Barstad* standard as controlling, the court erred by "shifting the burden of proof to [the Mother] to prove her fitness rather than requiring the [Petitioners] to prove [the Mother] was unfit or that compelling reasons existed" for granting the guardianships. The Mother explains that this appeal is not about "some magic combination of words" that the circuit court must utilize, but rather that the court's decision demonstrates a "fundamental lack of clarity in explaining *how* [the court] came to the conclusion [it] did." We disagree.

7

¶8     We conclude that the circuit court did not erroneously exercise its discretion in granting the petitions for guardianship of the children in these cases. The court was well aware of the standard that it was required to follow, referencing the **Barstad** standard at multiple points in its oral decision. The court was clear that, based on the totality of the circumstances, the Mother was unfit to have custody of her children and that compelling reasons existed for granting the guardianships:

> I don't think you are able to have your kids with you at this point in time. It has nothing to do with who is providing a better household, but you've pushed off your parental responsibilities on a lot of other people over the course of the past month and maybe years for some of the children. You haven't taken the bull by the horns and taken on those parental responsibilities. You've let other people run the show and stepped in only intermittently when it's something that you wanted to do. You've been incarcerated for [a] stretch of the time and been unable to take on the responsibilities for being the parent for these children. And all that creates a situation for me where it's certainly going to drastically affect the welfare of the children to be placed in the environment that I've described that I think I'd be placing them in if I simply denied the petitions for guardianship.

These findings by the circuit court were based on substantial evidence in the record as presented by the Petitioners and their witnesses, as well as the Mother's own testimony. Accordingly, we cannot conclude that the circuit court erroneously applied the **Barstad** standard or improperly shifted the burden to the Mother.

¶9     Where the Mother faults the court is in its discussions regarding what she calls "supposed failures to prove her fitness." For example, she identifies the court's observations concerning her failure to demonstrate stable

employment and housing as well as her failure to take complete responsibility for the care of the children when they were returned to her before the temporary guardianships were granted. We disagree that these examples illustrate that the court erred. Based on the evidence presented, the court concluded that the Mother was either unfit and/or that compelling reasons existed to grant the guardianships. The court was not requiring the Mother to prove anything. It was merely observing that there was nothing to contradict the credible evidence presented.

¶10 The propriety of granting the guardianships in these cases is supported by clear and convincing evidence. The record supports the circuit court's conclusion that the Mother failed to continually exercise significant parental responsibility for her children over an extended period of time. The court observed that the purpose of Safe Families is to put resources in place to help individuals get back on their feet: "The Safe Families system as it's been described to me was never intended to be a years or months down the road type of system of help." According to the court, the Mother's "situation has not measurably improved" during this period, and "it may be argued that it's gotten worse." Overall, the evidence presented by the Petitioners established an "extended disruption of parental custody" such that the Mother was in and out of the children's lives, and when the children were meant to be in the Mother's care, a pattern developed of the Mother relying on the Petitioners or others to provide reliable, consistent parental presence in the children's lives. Even when the Mother could and should have assumed parental responsibilities for the children, she failed to do so.

9

¶11     The court highlighted evidence of the Mother's lack of stability and how that impacted her ability to properly care for the children. Specifically, the court noted the Mother's failure to maintain stable employment and housing, despite testimony from a Safe Families coach indicating that she and the Mother devised "multiple" plans for her to be able to live with and provide for her children; the Mother never followed through with those plans. At one point, the Mother had an apartment, and volunteers with Safe Families, including the Petitioners, provided her with furnishings, a refrigerator, and food, but that was short lived. The court also noted that the Mother had been in and out of custody during this period, explaining that her incarceration also underscored the court's "stability concerns."

¶12     Further, the record demonstrates support for the court's concerns regarding the welfare of one or more of the children. For example, the Mother testified that she was aware that one of the female children had been sexually assaulted while in the care of the Mother's friend. The court also expressed concern for S.I.B., Jr.'s welfare. At trial, Dr. David Thompson, Ph.D., testified that S.I.B., Jr., "is evidencing an extreme amount of sexualized behavior," and he opined that "[m]uch of it is similar to behavior that we see with little boys who have been sexually assaulted." Thompson clarified that "[t]his can come in situations where a child has been sexually abused or it can come in situations where a child has been exposed to a very sexualized environment … or sexual material." It was Thompson's professional opinion that S.I.B., Jr., is "at a high risk of being assaulted in the future" based on his behavior. S.I.B., Jr.'s behavior had escalated to the point where he had to be placed in foster care due to his

10

behavioral needs, as Safe Families was unable to find a host family able to care for him. The court expressed concern that it took a long time for S.I.B., Jr.'s behavior to be addressed with "proper resources." According to the court, the evidence did not suggest it was a "socio economic issue"; "[i]nstead it was these children struggling and needing help and not getting it."

¶13 In conclusion, we echo the circuit court's observation that "this is a close case in some ways and in some ways it is not." We commend the Mother, as the circuit court did, for originally seeking help from Safe Families when she needed assistance. We also reiterate, like the circuit court, that this is not a termination of parental rights case; this is a guardianship case. Thus, the Mother has a statutory avenue by which she may request that these guardianships be terminated. Given that, our role is to review the decision of the circuit court based upon our standard of review and the evidence presented in the record. The court's decision establishes its conclusion that there was an extended disruption of the Mother's parental custody of the children and persistent neglect of her parental responsibilities that have affected the welfare of the children in these cases. This conclusion comports with the *Barstad* standards and is based on clear and convincing evidence in the record that the Mother failed to take significant responsibility for her children and that compelling reasons existed for awarding custody to the Petitioners. The court found that the children's best interests required granting the petitions. Based on our deferential standard of review and the evidence presented in the record, we cannot conclude that the circuit court erred.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.